IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 3, 2025

## ROBERT C. SIMMONS v. MICHAEL D. BLACK, ET AL.

**Appeal from the Chancery Court for Bledsoe County**
**No. 22-CV-3507     Melissa Thomas Willis, Chancellor**

_____

### No. E2024-01875-COA-R3-CV
_____

In the Chancery Court for Bledsoe County ("the Trial Court"), Robert Simmons ("Plaintiff") filed a complaint for declaratory judgment against his neighbors, Michael and Anna Marie Black ("Defendants") to establish the correct common boundary line between their two properties. Two competing surveys were presented to the Trial Court, but only one surveyor testified. The Trial Court found Plaintiff's surveyor, the testifying surveyor, credible and established the common boundary line in accordance with Plaintiff's survey. Defendants have appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Howard L. Upchurch and Stacy H. Farmer, Pikeville, Tennessee, for the appellants, Anna Marie Black and Michael D. Black.

C. Douglas Fields, Crossville, Tennessee, for the appellee, Robert C. Simmons.

### OPINION

### Background

This is a dispute over the location of the common boundary line between two neighboring properties. Plaintiff and Defendants own tracts of property that share a common boundary line. Plaintiff's northern boundary line is Defendants' southern boundary line as depicted in what the parties referred to as the "tax map":



The parties dispute the location of the common boundary line insofar as it affects who controls and has access to the road labeled in the tax map as "Robert Smith Rd" ("access road").

Plaintiff testified that his father, Ollie Simmons, purchased the southern tract of land ("the Simmons Tract") in 1981 from James and Joyce Mears. After Ollie Simmons died, Plaintiff's mother, Pok Sun Dennis, deeded the property to Plaintiff in 2007. Both of these deeds describe the boundary line in dispute as follows: "BEGINNING on a sourwood; thence North 50 West 20 poles to a black oak bush with pointers (corner to first lot)."

Ollie Simmons developed the access road from Mill Dam Road to his trailer. The access road has been used by the Simmons family for many decades as their private driveway. Plaintiff, Plaintiff's mother, and Plaintiff's cousin all testified that they had never seen anyone else use that road. Plaintiff explained that Defendants' predecessor-in-title, the Farmers, once asked the Simmonses to use the access road to transfer timber from their property. The Simmonses denied their request.

Defendants' property ("the Black Tract") was originally deeded in 1947 from T.A. Farmer to his son Wade H. Farmer, then in 2010 from the executor of the Wade Harris Farmer estate to Wade Harrison Farmer, trustee of the Wade Harris Farmer trust. In 2020, the property was deeded to Defendants. The deed provided by T.A. Farmer to Wade H. Farmer in 1947, provided the following description:

On the side of a ridge, Beginning at a double post oak; thence S. 32 deg. W. 42 poles to a sourwood, black oak pointers; thence N. 50 W. 82 poles to a black oak bush, post oak and black oak pointers; thence N. 32 deg. E. 42 poles to a stake, black oak and post oak pointers; thence S. 50 E. 82 Poles to the Beginning, Containing 21 acres, more or less.

In 2010, a surveyor from the David Hopkins ("Hopkins") surveying group surveyed what would become the Black Tract ("Hopkins Survey").[1] The Hopkins surveyor placed a pin by a 10" oak with three hacks in the bark, denoting this point as the Black Tract's southwestern corner and the Simmons Tract's northern most corner.

---

[1] A Hopkins employee, rather than David Hopkins himself, surveyed the Black Tract.

The Hopkins Survey is depicted below:



The Hopkins Survey labels the Black Tract as "TRACT 3" and depicts the access road partially laying over the disputed boundary line onto the Black Tract.

Based on the Hopkins Survey, the description in the deed from Wade Harrison Farmer, trustee of the Wade Harris Farmer trust, to Defendants, rephrases the disputed line as follows: "thence with and along the North line of Roberts Simmons, Deed Book 192, Page 714 ROBC; North 50° 44' 40" East 1296.59 feet to a new rebar corner."

Plaintiff was not aware the land had been surveyed by Hopkins until this dispute arose with Defendants. Based on the Hopkins Survey, the access road was no longer

- 4 -

entirely within the bounds of the Simmons Tract but traversed onto the Black Tract. After Defendants purchased the property in 2020, Michael Black began using the road to access the property. When Plaintiff found out Michael Black had been using what he thought was his private driveway, he hired Arnold Boynton ("Boynton") to survey the Simmons Tract.

Boynton's survey of the Simmons Tract ("Boynton Survey") designated a different northern corner of the Simmons Tract than the southwestern corner of the Black Tract designated by the Hopkins Survey. Instead of designating the marked 10" oak as the shared corner, Boynton designated a half-inch piece of rebar in the ground 118 feet northeast of the oak depicted in the Hopkins Survey. With the rebar designated as the corner, the Boynton Survey depicted the access road lying entirely on the Simmons Tract.

The Boynton Survey is depicted below:



The specific corner in dispute is enhanced below:



There is a 2.04-acre discrepancy in the competing surveys. The Hopkins Survey's corner is depicted on the Boynton Survey and designated as "Poplar Tree and 10" Oak w/ 3 hacks each as a pointers IRO w/cap." Boynton's corner is depicted as "IRO ½" Rebar."

At trial, Plaintiff testified about his history with the property and prior knowledge of its boundaries. Boynton testified about his survey and surveying methods. Plaintiff testified that he grew up on the Simmons Tract and had at one point lived there for a period of 25 years, although he lived in Crossville now. He explained that he was very familiar with the property and its boundaries given that his father was dedicated to keeping the boundaries "clean" and marked at all times. His father showed him the location of the corners, which he described as rebar driven into the ground. He further testified that the corners described in his deed were both trees no longer in existence and that he believed the "hacks" in the oak at the Hopkins corner were new and did not date back forty or fifty years.

When asked about his "sequence for considering what you have to work with to do a survey," Boynton explained:

Number one is a survey at the time of the conveyance. Number two is a natural monument, God-made monument. Number three is an artificial monument. Four is the adjoining deeds. The next is courses and distances. And the last one is acreage.

Boynton testified that he found no natural monuments, although he did find the Hopkins "iron rod with a cap" by the 10" oak. When asked whether the hacks in the oak appeared older or newer than forty or fifty years, he responded: "They are newer than that." He acknowledged that he is not a "tree man," but stated that he had looked at a lot of "hash marks" over the years. He concluded that he did not find either the sourwood or black oak bush referenced in the Simmons chain of title.

With the help of Plaintiff's stepfather, Boynton discovered a half-inch rebar, which he designated as the northern corner of the Simmons Tract. The rebar was found three to four feet from a rock and under a fence. He considered the rebar to be an artificial monument. He was confident that this artificial monument designated the northern corner of the Simmons Tract and that it was not a marker for the tracts of land behind the parties' properties.

Boynton further explained the reasoning behind the difference between the Hopkins corner and his corner as follows:

Q. Okay. The difference between the two locations as far as the call goes for the direction, do you consider those differences significant?
A. 118 feet is a long way in this small of a distance. There's just not enough room there for both of those calls.

Q. Okay. So basically I think what you are saying there is between the boundaries of the neighbors?

A. Between --

Q. When you look at the footage for both of these parties, in the rear there's just not that many feet back there?

A. There's just not that many feet there.

Q. Okay. When you have that kind of situation, what are some of the things you try to do to reconcile it?

A. You try to find an original corner. You try to find the survey at the time of the conveyance. If there had been no corner there, I would have measured the entire line and did what they call a single proportionate measure. In other words, Mr. Simmons had -- I believe it was 495 feet

called in his deed.  Mr. Black's was 6-something.  I would have given them their portion of the entire amount and set a pin there.

Q.  So roughly doing that math in my head is a 60 percent and 40 percent kind of split?

A.  It's kind of a split.

Q.  It's about 1,000 feet.  And then 400 and 600, if it's not all there.

A.  Then you give them what they are supposed to have as far as that proportion of it.

Q.  Try to split the difference?

A.  Yes, try to split the difference or give them both what's their share of it, and probably try to get both parties down there to talk about it.

\* \* \*

Q.  Okay.  All right.  Now, you say if you hadn't found a corner. Which corner did you find that kind of led you away from that?

A.  Well, both of them.

Q.  So you found both corners?

A.  We found both corners there.  If I just found one, it would have been easier to deal with.  But with two you've kind of got, that puts a real quandary into the whole thing.

Q.  All right.

Boynton surmised that that problem arose from these tracts being mapped out on paper originally rather than surveyed on the ground.  He explained:

A.  . . . .  The southwest line and the northeast line on the Simmons deed are parallel.  I'm sure that the same is true for the Black deed.  So you still got an issue.  There is just not enough distance in that back line for both properties.

Q.  Have you found through your experience that sometimes in old survey descriptions, they just mapped it out on paper?

A.  Sometimes.

Q.  It really wasn't even done on the ground?

A.  The closer they come to closing, the more apt it was to have just been drawn out.

Boynton affirmed that his survey represented the Simmons Tract.

Michael Black testified that the access road was advertised as an access point to his property. Wade Harrison Farmer even assured him he had access to the property along that road, and his deed provided for a 16' ingress/egress, referencing the Simmons deed. The Blacks did not have a title search done on the property before purchasing it.

The Trial Court entered a judgment in favor of Plaintiff, noting that Boynton offered the only expert testimony in the case, that it found Boynton credible, and that Plaintiff was very familiar with the property in contrast to Defendants who had only recently spent time in the area. Therefore, the Trial Court found that the Boynton Survey was correct and that "most of the roadway at issue lies entirely on the Simmons tract" and does not provide Defendants access to their tract.[2] The Trial Court also found that no prescriptive easement existed. Defendants appealed.

## Discussion

Although not stated exactly as such, Defendants raise two issues: (1) whether the Trial Court erred in establishing the common boundary line based upon the Boynton Survey and (2) whether the Trial Court erred in denying Defendants an easement for ingress and egress to their real property.

The standard of review for a trial court's boundary line dispute decision is as follows:

> The appellate court conducts a *de novo* review of the trial court's decision in a boundary dispute with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." We also give great weight to a trial court's determinations of credibility of witnesses. Issues of law are reviewed *de novo* with no presumption of correctness.

*Foust v. Metcalf*, 338 S.W.3d 457, 462 (Tenn. Ct. App. 2010) (internal citations omitted). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility

---

[2] Although the Trial Court found that "most" of the access road lies on Simmons's tract, it appears the Trial Court was referencing the fact that the first portion of the access road traverses a different landowner's property. This portion of the access road was not in dispute.

absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

This Court has also explained:

> In determining disputed boundaries, resort is to be had first to natural objects or landmarks, because of their very permanent character; next, to artificial monuments or marks, then to the boundary lines of adjacent landowners, and then to courses and distances. This rule of construction is to aid in determining the intention of the parties to a deed which is to be determined, if possible, from the instrument in connection with the surrounding circumstances.

*Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980).

In its final judgment, the Trial Court made the following findings of fact:

> In regard to the location of the boundary line between the parties, Plaintiff, Robert C. Simmons, relied on the testimony of surveyor, Arnold Boynton to show the location of his line. Mr. Boynton offered the only expert testimony in the case.

> The Court found Mr. Boynton to be a credible witness and that his testimony was in accord with the Tennessee Rules of Evidence 702 requirement that the expert opinion substantially assisted the trier of fact; Mr. Boynton was strongly and very competently cross-examined as to his opinions on his survey results.

> Specifically noted was [ ] Mr. Boynton's candid testimony that Mr. Simmons' mother and father-in-law showed him the location of a rock marking the corner of the Simmons property. Mr. Boynton indicated he did not solely rely on this representation, nor did it sway or taint his effort to locate the line. It was one factor in his efforts, and he searched for and did locate other evidence he felt was reliable, that supported the location of the corner with the Defendants, Blacks' property.

> Plaintiff Robert C. Simmons, testified he grew up on the property, was familiar with what had historically been considered the corner, and that he had during his ownership, tried to keep this line marked.

> The Blacks were new owners of their tract and as such did not have much personal knowledge of the history of the line or property.

- 10 -

Based upon the proof before the Court, it is the Court's finding that the boundary of the parties is that boundary line of the Simmons tract as indicated on Mr. Boynton's survey in this case as Exhibit 9, S44° 44' 09" E, 1309.92'.

The evidence does not preponderate against the Trial Court's findings.

Boynton testified that he considered and complied with the hierarchy of considerations outlined in *Thornburg*. He first looked for the natural monument listed in the Simmons deed—the black oak bush with pointers. He was not convinced that the 10" oak with hacks found by the Hopkins surveyor was the bush referenced in the Simmons deed. The surveyor who completed the Hopkins Survey did not testify; therefore, we have no means of knowing the reasoning behind the Hopkins Survey. Defendants offered no testimony to contradict Boynton's conclusion.

Boynton's conclusion that the 10" oak was not the black oak bush referenced in the Simmons deed was supported by Plaintiff's testimony. Plaintiff testified that the black oak referenced in the Simmons deed was no longer standing. The Trial Court found Boynton and Simmons credible, and Defendants have not pointed to clear and convincing evidence to demonstrate otherwise.

Given that Boynton did not find a natural monument, he resorted to an artificial monument—the half-inch rebar sitting 118 feet from the corner marked by the Hopkins Survey. Although Defendants' counsel cross-examined him thoroughly about whether this rebar could be a marker for one of the properties behind the Simmons and Black Tracts, Boynton was confident it was not. Again, Defendants did not present contradicting testimony from another surveyor, and we discern no clear and convincing evidence to call into question Boynton's credibility.

In explaining the discrepancy between the corner in the Hopkins Survey and his designated corner, Boynton testified that there was insufficient footage in the rear of the properties to contain the footage designated for Plaintiff and the footage designated for Defendants. Boynton suggested that this may have been due to the practice of mapping out these properties on paper, rather than surveying them on the ground. Had he not discovered the half-inch rebar, he testified that he would have determined the corner using a single proportionate measure, where he would have divided the back property lines based on a proportion of Plaintiff's rear footage and Defendants' rear footage. Given the conundrum Boynton was left with, we discern no error in his reliance on the artificial monument. Furthermore, Plaintiff testified that the Simmons Tract's corners were always marked with rebar.

The Trial Court had the benefit of Boynton's testimony. We, like the Trial Court, are left with two surveys: one with explanation and one without explanation. Boynton

explained why he made certain decisions in surveying the Simmons Tract, and we can follow his reasoning. Boynton's reasoning and method comport with that outlined in *Thornburg*. In contrast, we do not know why the Hopkins surveyor made certain decisions. Defendants did not provide the Trial Court with the benefit of a testifying surveyor who could explain a countervailing view. As it stood at trial, there was one testifying surveyor, Boynton, who explained his reasoning. The Trial Court found Boynton credible, and there is no clear and convincing evidence to discount the Trial Court's credibility determination. We accordingly affirm the Trial Court's establishment of the boundary line in accordance with the Boynton Survey.

Defendants also argue that "if in fact the common boundary line is in accordance with Hopkin's survey," they require an easement across Plaintiff's property given that the Hopkins Survey depicts the access road lying on both Plaintiff's and Defendants' properties. However, having affirmed the Trial Court's establishment of the boundary line based on the Boynton Survey, which places the access road entirely on the Simmons Tract, we deny their request for remand for the Trial Court to consider this question. Their argument appears to be conditioned on our adoption of the Hopkins Survey, which we have rejected. Because we have affirmed the Trial Court's establishment of the boundary line based upon the Boynton Survey and as a result no portion of the access road lay on Defendants' property, we decline their request for remand.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's judgment and remand this cause to the Trial Court for collection of costs below. Costs of this appeal are assessed against the appellants, Michael and Anna Marie Black, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

- 12 -